UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | |
| | § | |
| | § | Civil Case No. 1:22-CV-00458 |
| v. | § | |
| | § | |
| SOUL VAPOR, LLC, a corporation, | § | |
| and AURELIUS JEFFREY, an | § | |
| individual, | § | |
| Defendants. | § | |

**VERIFICATION OF AURELIUS JEFFREY FOR HIMSELF AND SOUL VAPOR LLC**

I, Aurelius Jeffrey, declare as follows:

1. I am a defendant in the present case and I submit this declaration on my own behalf and as the principal and responsible party for Defendant Soul Vapor LLC.

2. I opened Soul Vapor as an online store in 2015, offering our house line of open tank e-liquids (all of which included nicotine).  In May 2019, I established a retail location at 604 Thorn St., Princeton, West Virginia 24740.  Soul Vapor was registered as an LLC with the State of West Virginia in early 2021.

3. The attached email correspondence between myself and FDA officials from the Office of Compliance and Enforcement (OCE) are true and correct copies of the correspondence.

4. On June 8, 2021, I had the first conference call representatives of the FDA. The FDA representative said that Soul Vapor should not be selling e-liquid online.  I stated that I would remove the payment gateway from Soul Vapor's website, www.soulvaporejuice.com.  I specifically asked him if I should remove the information

regarding Soul Vapor's e-liquid products then shown on the website completely, or if removing the payment gateway was sufficient so that no purchases could be made. The FDA representative stated that it was sufficient to remove the payment gateway.

5. I immediately emailed OCE after the call to memorialize the discussion. That email is included in the correspondence attached to Defendants' response to the United States' motion for summary judgment. I did not receive any response to this email or any other communication disputing my restatement of the terms discussed in the conference call.

6. I did what I said I would do in the email. Namely, I removed the payment gateway from the website and I removed all of the nicotine e-liquids from display and placed them in storage. There were only approximately 100 bottles of e-liquid at issue at that time.

7. From that point on, I changed Soul Vapor's operations. Instead of making e-liquids with nicotine, we began preparing mixtures of PG/VG and various flavors, but without nicotine included in the mixture. Instead, we sold nicotine in separate containers for customers desiring nicotine. Not all customers use nicotine; approximately five percent of our customers vape solely the PG/VG/flavor mixture without nicotine.

8. On July 19, I received another email from Mr. Miletich seeking another conference call "to explain what further steps need to be taken." As my response email half an hour later reflects, I was surprised by the request, because I had understood that the steps already taken after the first call had satisfied all requests.

9. I agreed to OCE's request for another conference call, which was conducted the next day, July 20, 2021. Mr. Nathan Everly requested that Soul Vapor

add a statement to the website to make clear that the nicotine e-liquids were not for sale. From what I recall, Mr. Everly provided me with the precise language to be added. I have reviewed Mr. Everly's February 10, 2023 declaration submitted with the government's motion, in which he states in paragraph 15 that, "I began the call by notifying Mr. Jeffrey that, despite his promising otherwise during the June 8, 2021 teleconference, the Soul Vapor website still offered for sale new tobacco products that lack required FDA authorization." I believe Mr. Everly's statement here is misleading, because it suggests that I had not done something that was specifically requested. In fact, as reflected in the correspondence, I understood that I had complied with FDA's requests after the initial call, and this was a new request, which I also complied with immediately.

10. I added the requested statement to the Soul Vapor website shortly after the phone call. I emailed OCE on July 21 to confirm same.

11. FDA Inspectors were at Soul Vapor's establishment for three days in March 2022. They were present in the store or the adjoining office area from approximately 9 a.m. to 4:30 or 5:00 p.m. each of the three days, with a lunch break during which they would leave the store.

12. The inspectors were often situated such that they were able to listen to conversations that I and my employee(s) had with our customers. The inspectors summarized these interactions in their report.

13. The inspectors also interviewed staff members, Leslie and Joan.

14. The inspectors would sometimes state to me that they were going to call superiors at the FDA to discuss the information that I had provided. They would then return after their phone calls with FDA and say they had spoken to superiors, and would

sometimes ask for additional documents or information. Mr. New specifically stated multiple times that his superiors said that the way Soul Vapor was selling—with the nicotine separated from the flavored juice—was something they had not seen before and they did not know what to do with my situation. Mr. New said there was no precedent for the situation.

15. As I stated to the inspectors, Matthew New and Young Kim, in March 2022, I do not believe that Soul Vapor is engaged in activity regulated by the FDA or within FDA jurisdiction after this change in operations/products.

16. At the conclusion of the inspection, I had a meeting with the inspectors. Mr. New, referring to Soul Vapor's new method of selling, i.e., separating the nicotine from the PG/VG/flavor products, said "you're the first person we've seen do this, so there's no precedence for how to handle your situation." He noted that "any minor changes we've requested you've done, so I don't see any issues." He said that he did not have any more suggestions or requests. New also stated that "you're not directly violating any rules" and therefore he would not issue a notice of any violation. Neither he nor Kim ever stated that what I was doing was prohibited.

17. Mr. New recommended another minor modification during the inspection which we also implemented, although it is not detailed in the Inspection Report. On the second day of the inspection, he advised that we include a page at the front of our flavor menu book (which is available at the counter for customers in the store) advising that Soul Vapor was not selling e-liquids with the nicotine included. We complied with this request.

18. At the conclusion of the inspection, I believed that it had ended on good terms and that the matter had been resolved, especially given that Mr. New told me he observed no violations after three days.

19. In September 2021, I logged into the FDA's registration system to update our status based on our changed operations and product offerings. From what I recall, the only options are stating that you are in business or out of business. I designated Soul Vapor as inactive, because we are not active in a way captured by the law or FDA regulations, which only extend to tobacco product manufacturers/processers as defined in the statute. At this point we are just a vape shop that is not engaged in manufacturing regulated products.

20. Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury that the factual statements in this Verified Complaint concerning myself, my activities, and my intentions are true and correct.

21. If called upon to testify I would testify competently as to matters stated herein and in the foregoing Verified Complaint. Executed on March 16, 2023, in Mercer County, West Virginia.

Aurelius Jeffrey

18. At the conclusion of the inspection, I believed that it had ended on good terms and that the matter had been resolved, especially given that Mr. New told me he observed no violations after three days.

19. In September 2021, I logged into the FDA's registration system to update our status based on our changed operations and product offerings. From what I recall, the only options are stating that you are in business or out of business. I designated Soul Vapor as inactive, because we are not active in a way captured by the law or FDA regulations, which only extend to tobacco product manufacturers/processors as defined in the statute. At this point we are just a vape shop that is not engaged in manufacturing regulated products.

20. Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury that the factual statements in this Verified Complaint concerning myself, my activities, and my intentions are true and correct.

21. If called upon to testify I would testify competently as to matters stated herein and in the foregoing Verified Complaint. Executed on March 16, 2023, in Mercer County, West Virginia.

*Aurelius Jeffrey*